An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1097
NORTH CAROLINA COURT OF APPEALS

Filed:  1 April 2014

IN THE MATTER OF:

                                Chatham County
                                Nos. 12 JA 40-42

T.W.C., M.L.N., E.J.N.


Appeal by respondents from order entered 8 August 2013 by Judge Beverly Scarlett in Chatham County District Court.  Heard in the Court of Appeals 27 February 2014.

> *Holcomb & Cabe, L.L.P., by Carol J. Holcomb and Samantha H. Cabe, for petitioner-appellee Chatham County Department of Social Services.*
>
> *Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for guardian ad litem.*
>
> *Mercedes O. Chut, for respondent-appellant mother.*
>
> *Sydney Batch, for respondent-appellant father.*


CALABRIA, Judge.


Respondent-mother and respondent-father (collectively "respondents") appeal from the trial court's order ceasing reunification efforts with respondents and awarding guardianship

of respondent-mother's child "Thomas[1]" to his paternal grandparents[2] and respondents' children "Luke" and "Eliot" to their current foster parents. We affirm the portion of the trial court's order regarding Thomas and the cessation of reunification efforts with respondent-mother, but reverse and remand the portions of the order which award guardianship of Luke and Eliot to non-relative foster parents, deny visitation to respondent-father, and cease reunification efforts with respondent-father.

## I. Background

On 5 September 2012, the Chatham County Department of Social Services ("DSS") filed juvenile petitions alleging that Thomas, Luke, and Eliot (collectively "the boys") were neglected and dependent juveniles. The petitions alleged, *inter alia*, that the boys were residing with respondents when they witnessed a physical confrontation between respondents and other individuals. During the altercation, respondent-mother hit a man on the head with a baseball bat. DSS obtained nonsecure custody of the boys and on 21 September 2012, the trial court ordered Luke and Eliot placed in an unlicensed foster home. On

---

[1] The parties have stipulated to pseudonyms for the minor children involved in this case.
[2] Thomas's father is not a party to this appeal.

16 November 2012, the trial court adjudicated the boys neglected and dependent juveniles.

DSS retained custody of the boys after the adjudication and through two review hearings. After a permanency planning hearing on 25 July 2013, the trial court entered an order directing DSS to cease reunification efforts with respondents and awarding guardianship of Thomas to his paternal grandparents and of Luke and Eliot to their foster parents. Respondents appeal.

## II. Respondent-Mother's Separate Issues

On appeal, respondent-mother individually raises two issues: (1) that portions of the trial court's finding of fact 3 were unsupported by competent evidence; and (2) that the trial court's findings do not support its conclusion that reunification efforts with respondent-mother should cease. We disagree with both arguments.

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207,

213, 644 S.E.2d 588, 594 (2007). "'An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.'" *In re N.G.*, 186 N.C. App. 1, 10-11, 650 S.E.2d 45, 51 (2007) (quoting *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002)), *aff'd per curiam*, 362 N.C. 229, 657 S.E.2d 355 (2008).

A. Finding of Fact 3

Respondent-mother first contends that portions of finding of fact 3 are not supported by the evidence presented at the permanency planning hearing. The challenged portions of this finding are as follows:

> 3. It is not possible for the juveniles to be returned home in the immediate future or within the next six (6) months and in support thereof, the court specifically finds:
>
> a. Respondent mother has a history of mental health and substance abuse issues. She has not participated in either substance abuse treatment or mental health treatment. She reports that she has had two (2) appointments at Daymark but has no verification to support her attendance. She has not provided a drug screen to the department since April 2013.
>
> . . .
>
> g. Respondent mother has not been in consistent contact with the department or

her social worker.

   h. Respondent mother has not seen her children or worked her case plan in about fourteen (14) weeks.

## 1. Finding of Fact 3a

Respondent-mother first challenges the court's finding that she has not participated in either substance abuse or mental health treatment, noting that there was ample evidence presented that she attended treatments for these issues. However, while respondent-mother is correct that the trial court's plain language appears to suggest that respondent-mother never participated in treatment at any time, when read in context with the remainder of the order it is clear that the court's finding refers only to the time period after April 2013. Other portions of the court's order include several more specific findings which discuss respondent-mother's irregular participation in substance abuse treatment programs prior to that date. These other, more detailed findings adequately establish respondent-mother's difficulties with obtaining appropriate treatment even if this particular challenged finding is disregarded as being unsupported by the evidence. Thus, regardless of whether or not this finding is supported by the evidence, it is ultimately immaterial to the result reached by the trial court.

2. Findings of Fact 3g-h

With regards to the trial court's other challenged findings, the evidence presented at the permanency planning hearing, which includes the report and testimony of the social worker in charge of the case, the testimony of respondent-mother, and the report of the children's guardian *ad litem*, provides sufficient support for those findings. The evidence at the hearing established that after respondent-mother checked out of Oxford House, an inpatient substance abuse treatment facility, on 22 April 2013, her contact with her social worker became sporadic. The social worker testified that respondent-mother was "MIA" from 17 April to 7 May 2013 and that she failed to attend a scheduled meeting with the social worker on 25 April 2013. Respondent-mother contacted the social worker on 20 May 2013 and stated that the social worker was to communicate only with her attorney from that point forward. Nonetheless, in early June 2013, respondent-mother had her mother contact the social worker and report that respondent-mother was at Moore Regional Hospital for substance abuse and mental health treatment.

Additionally, respondent-mother did not appear for drug screens on 10 May 2013 and 24 June 2013. Respondent-mother

last visited with her children on 17 April 2013, about fourteen weeks prior to the date of the DSS report submitted 25 July 2013. This evidence was sufficient to support the trial court's findings that respondent-mother had not had consistent contact with the social worker and that she had not visited with the boys or worked her case plan in fourteen weeks. This argument is overruled.

## B. Cessation of Reunification Efforts

Respondent-mother next contends that the trial court's findings of fact do not support its determination that reunification efforts should cease. Pursuant to N.C. Gen. Stat. § 7B-507, the trial court may order the cessation of reunification efforts if the court makes findings that those efforts "clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1) (2013). The trial court made such a finding in the instant case, and it is supported by both other findings in the trial court's order and by the evidence presented at the permanency planning hearing. The trial court's findings and the evidence at the hearing demonstrate that respondent-mother lacked reliable housing, that she did not provide proof of

employment, and that she had ongoing problems with drug addiction and mental instability which would not be resolved within the immediate future. The evidence also demonstrated that respondent-mother would be unable to provide a safe, permanent home for the boys within a reasonable amount of time. Based upon its findings and the evidence presented at the hearing, the trial court did not abuse its discretion in ordering that reunification efforts should cease. This argument is overruled.

Since we have overruled respondent-mother's separate arguments and these are the only arguments which involve the portion of the trial court's order regarding Thomas, we affirm the trial court's order awarded guardianship to Thomas's paternal grandparents. In addition, we affirm the portion of the trial court's order which ceased reunification efforts with respondent-mother.

### III. Respondents' Joint Issues

Respondents jointly argue that the trial court erred by failing to place Luke and Eliot with their paternal grandmother in the absence of any findings or evidence indicating the paternal grandmother was unfit or placement with her was not in their best interests. We agree.

> In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile.

N.C. Gen. Stat. § 7B-903(a)(2)(c) (2013). To comply with this statute, the trial court must (1) make factual conclusions and not simply recite evidence regarding placement with a relative, and (2) make specific findings of fact explaining why placement with a relative would not be in the child's best interests if the child is not placed with the relative. *In re L.L.*, 172 N.C. App. 689, 704, 616 S.E.2d 392, 401 (2005)(reversing the award of guardianship to non-relative foster parents for failing to meet these requirements).

In the instant case, the trial court made only the following finding concerning the potential placement of Luke and Eliot with their paternal grandmother:

> [Respondent-father] requests that his children be placed with his mother who attended the hearing and now states that she is willing and able to care for both boys. According to the Social Worker, the paternal grandmother originally said that she could

>not take care of them as she is also taking
>care of other grandchildren.

This finding does not meet the requirements of N.C. Gen. Stat. § 7B-903 as interpreted by *L.L.* It fails to determine whether the paternal grandmother was actually willing and able to care for the children, as she stated at the time of the hearing, and it does not explain why placement with the paternal grandmother would not be in Luke and Eliot's best interests. As a result, the portion of the order awarding guardianship of Luke and Eliot to non-relative foster parents must be reversed and remanded for the required findings.

Respondents also contend that the trial court failed to comply with N.C. Gen. Stat. § 7B-907 and N.C. Gen. Stat. § 7B-600(c) by failing to make findings that the non-relative foster parents understood the legal significance of assuming guardianship and that they had the financial resources to provide for the children on a permanent basis. Since we are reversing and remanding the award of guardianship to the foster parents, we need not consider this contention as it may become moot.

## IV. Respondent-Father's Separate Issues

In his individual appeal, respondent-father contends: (1) that the trial court abused its discretion by failing to provide

visitation with his children because the trial court's findings of fact do not support its conclusion that it is not in the children's best interests to visit with respondent-father; and (2) that the trial court's findings do not support the cessation of reunification efforts with respondent-father. We agree with both contentions.

A. Visitation

An order which continues placement outside a parent's home "shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a) (2013). Conversely, the court may prohibit visitation or contact by a parent when it is in the juvenile's best interests or consistent with the juvenile's health and safety. *See In re J.S.*, 182 N.C. App. 79, 86-87, 641 S.E.2d 395, 399 (2007). We review an order disallowing visitation for abuse of discretion. *C.M.*, 183 N.C. App. at 215, 644 S.E.2d at 595.

> This Court has previously held that, [i]n the absence of findings that the parent has forfeited [his or her] right to visitation or that it is in the child's best interest to deny visitation[,] the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place[,] and conditions under which such visitation rights may be exercised. As a result, even

> if the trial court determines that visitation would be inappropriate in a particular case or that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration.

*In re K.C.*, 199 N.C. App. 557, 562, 681 S.E.2d 559, 563 (2009)(internal quotations and citation omitted).

In the instant case, the sole finding of fact regarding respondent-father is that he "is currently incarcerated and is scheduled to be released in 2014 but could be released as early as December 2013." The court report prepared by the social worker and incorporated into the court's order indicates that respondent-father "appears to have a very loving and close bond with both [sons] . . . ." The report also goes into more detail as to why respondent-father was incarcerated. However, nothing in the report suggests that the boys were harmed or placed at risk of harm due to the conduct resulting in these convictions, and the court did not make any findings to that effect. Ultimately, the trial court's order does not comply with N.C. Gen. Stat. § 7B-905.1(a) in that it suspends visitation as to respondent-father but fails to set out sufficient facts which would demonstrate that visitation "would be inappropriate in

light of the specific facts under consideration." *K.C.*, 199 N.C. App. at 562, 681 S.E.2d at 563. Consequently, we must reverse and remand this portion of the trial court's order.

### B. Cessation of Reunification Efforts

Respondent-father finally argues that the trial court failed to make adequate findings of fact to support the conclusion of law that reunification efforts with him should cease. As previously noted, the trial court's only finding regarding respondent-father was that he was incarcerated and was scheduled to be released as early as December 2013. The court report incorporated by the trial court in its order mentions the reason for his incarceration, the fact his incarceration has made it difficult for him to comply with his case plan, the loving bond he has with his children, his participation in Narcotics Anonymous while he has been incarcerated, and the efforts made by DSS at reunification. This evidence does not support a finding that reunification efforts would "clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1). Thus, the trial court abused its discretion by ordering that reunification efforts with respondent-father should cease. We

reverse and remand this portion of the trial court's order as well.

## V.   Conclusion

We affirm the portions of the order ceasing reunification efforts with respondent-mother and awarding guardianship of Thomas to his paternal grandparents.  We reverse the portions of the order awarding guardianship of Luke and Eliot to the foster parents, denying visitation to respondent-father, and ceasing reunification efforts with respondent-father.  We remand for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

Judges ELMORE and STEPHENS concur.

Report per Rule 30(e).